IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TARA LEONARD,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br><br>Defendant. | : Civil No. 1:26-CV-00297<br><br><br><br><br>: (Chief Magistrate Judge Bloom) |

# MEMORANDUM OPINION

## I. Introduction

Tara Leonard filed an application under Title XVI of the Social Security Act for supplemental security income on July 22, 2021. Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Leonard was not disabled from the date of her application through November 3, 2025, the date of the ALJ's decision.[1]

Leonard now appeals this decision, arguing the ALJ's decision is not supported by substantial evidence. After a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant

[1] Tr. 1023-38. This was the second ALJ decision on Leonard's supplemental security income application, the first having been remanded by the Appeals Council on September 27, 2024. *See* Tr. 1094-96.

evidence as a reasonable mind might accept as adequate to support a conclusion,'"[2] we conclude that substantial evidence supports the ALJ's findings in this case. Therefore, we will affirm the decision of the Commissioner denying this claim.

## II. Statement of Facts and of the Case

Leonard filed for supplemental security income, alleging disability due to back problems, bunions, depression, addiction, bipolar disorder, generalized anxiety disorder, and borderline personality disorder.[3] Leonard was 32 years old at the time of her application, had at least a high school education, and had no past relevant work.[4]

An ALJ held a hearing on Leonard's disability application on October 10, 2025.[5] Leonard and a Vocational Expert ("VE") both appeared and testified at this hearing.[6] Following this hearing, November 3, 2025, the ALJ issued a decision denying the plaintiff's application for supplemental security income.[7] The ALJ first concluded

[2] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).
[3] Tr. 247, 1025, 1049-50.
[4] Tr. 1036.
[5] Tr. 1023.
[6] *Id.*
[7] Tr. 1023-38.

that Leonard had not engaged in substantial gainful activity since her application date.[8] At Step 2 of the sequential analysis that governs disability claims, the ALJ found that the plaintiff suffered from severe impairments of degenerative disc disease of the lumbar spine, obesity, bipolar disorder, generalized anxiety disorder, and borderline personality disorder.[9] At Step 3, the ALJ concluded that none of these impairments met or equaled the severity of a listed impairment under the Commissioner's regulations.[10] The ALJ specifically found Leonard's mental impairments to be nonsevere because they only caused moderate limitations in the "paragraph B" criteria (understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself).[11]

Between Steps 3 and 4, the ALJ then concluded that the plaintiff has the residual functional capacity ("RFC") to perform a range of light work with some postural limitations and additional mental health-related limitations, including simple routine tasks, simple work-related

[8] Tr. 1025.
[9] Tr. 1025-26.
[10] Tr. 1027-29.
[11] *Id.*

decisions, ordinary changes in a routine work setting, and no interaction with the public but occasional interaction with co-workers and supervisors.[12] The ALJ considered the medical records, opinion evidence, and the plaintiff's subjective symptoms.[13] Ultimately, the ALJ concluded that the plaintiff was not as limited as she alleged.

Having made these findings, the ALJ found at Step 4 that Leonard had no relevant past work but found at Step 5 that she could perform the occupations of a routing clerk, mail clerk, and small products assembler.[14] Accordingly, the ALJ found that Leonard had not met the stringent standard prescribed for supplemental security income and denied her claim.[15]

This appeal followed. On appeal, Leonard argues that the ALJ erred by (1) failing to include limitations for the plaintiff's time off task, absenteeism, handling work-related stress, and/or interacting with others; (2) failing to address the need for a sit/stand limitation; (3) improperly concluding that Leonard can meet the standing/walking and

---

[12] Tr. 1029.
[13] Tr. 1029-36.
[14] Tr. 1037.
[15] Tr. 1038.

lifting demands of light work; and (4) improperly assessing the medical opinions.[16] This case is fully briefed and is therefore ripe for resolution. For the reasons set forth below, we will affirm the decision of the Commissioner.

## III. Discussion

### A. Substantial Evidence Review and the Disability Determination Process

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[17] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[18] Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla.[19]

---

[16] Doc. 13 at 1.
[17] *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).
[18] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).
[19] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence.[20]

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder."[21] Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ adequately articulated the reasons for his decision.[22] The ALJ is not required to use "magic" words, but rather must discuss the evidence and explain the reasoning behind his or her decision with more than just conclusory statements.[23] Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."[24]

To be eligible for benefits, a claimant must demonstrate that he or she has a severe physical or mental impairment that precludes him or her from engaging in previous work or "any other substantial gainful

---

[20] *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).
[21] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).
[22] *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).
[23] *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted).
[24] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

work which exists in the national economy."[25] To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured.[26] In making a disability determination, the ALJ follows a five-step evaluation.[27] The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[28]

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity ("RFC")—that is, "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[29] The ALJ must consider all the claimant's medically

[25] 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).
[26] 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).
[27] 20 C.F.R. §§404.1520(a), 416.920(a).
[28] 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).
[29] *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1).

determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[30] Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence.[31]

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work.[32] If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience.[33]

### B. Legal Benchmarks for the ALJ's Assessment of Medical Opinions

For applications filed after March of 2017, the regulations require ALJs to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the

---

[30] 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).
[31] *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).
[32] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).
[33] 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

claimant, specialization, and other factors tending to support or contradict a medical opinion.[34] Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision.[35] Supportability means "[t]he more relevant the objective medical evidence and supporting explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be."[36] The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources."[37]

It is well settled that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations."[38] When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason."[39] Further, the ALJ can credit parts of an opinion without giving

---

[34] 20 C.F.R. § 404.1520c(c).
[35] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi*, 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022).
[36] 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).
[37] 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).
[38] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).
[39] *Mason*, 994 F.2d at 1066.

credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated.[40] On the other hand, in cases where no medical opinion credibly supports the claimant's allegations, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[41]

C. <u>The ALJ's decision is Supported by Substantial Evidence.</u>

Our review of the ALJ's decision denying an application for benefits is deferential; we must simply determine whether the ALJ's decision is supported by substantial evidence in the record.[42] Judged against this deferential standard, we conclude that substantial evidence supported the ALJ's decision in this case.

Leonard argues that the ALJ failed to properly account for limitations from the opinion evidence regarding her alleged difficulties handling stress, interacting with others, as well as time she would be off task or absent. She contends that the record and opinions of the consultative examining psychologist, Amanda Slowik, Psy.D.; examining

---

[40] *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).
[41] *Cummings*, 129 F. Supp. 3d at 214–15.
[42] *Biestek*, 139 S. Ct. at 1154.

primary care physicians, Lauren Yee, D.O. and Curtis Cranmer, M.D.; and treating physician, Werner K. Brammer, M.D., each contained some limitation regarding her ability to perform work on a sustained basis, and that the ALJ failed to address or incorporate those limitations. After consideration, we find no error with the ALJ's consideration of these limitations and assessment of the opinion evidence.

The ALJ found Dr. Slowik's March 2021 psychiatric examining opinion that Leonard's ability to sustain an ordinary routine is moderately limited, and her ability to regulate her emotions is moderately to markedly limited to be persuasive.[43] The ALJ found that Dr. Slowik's opinion was supported by her examination findings, which indicated at least a moderate impairment in attention and concentration, mild impairment in recent and remote memory skills, and below average intellectual functioning.[44] At the same time, Dr. Slowik reported that Leonard "was cooperative, had adequate social skills, was well groomed, maintained appropriate eye contact, spoke fluently, had coherent and goal directed thoughts, showed no evidence of hallucinations, delusions,

---

[43] Tr. 1034-35; *see* Tr. 550-54.
[44] Tr. 1034.

or paranoia, had an appropriate affect, and had a neutral mood."[45] The ALJ reasoned that Dr. Slowik's opinion was consistent with Leonard's outpatient mental health treatment and medical records, which contained both benign and adverse mental status examination findings.[46] Considering Dr. Slowik's examination findings together, the ALJ concluded that Leonard "is limited but not clearly disabled by her mental impairments."[47]

Consistent with that assessment, the ALJ accommodated Leonard's limitations in sustaining a routine and emotional regulation described by Dr. Slowik in her RFC by restricting her to limited simple and routine jobs with limited social interaction. The ALJ found, however, that greater work-related mental limitations were inconsistent with the record as whole, including Leonard's own report from December 2024 that she was doing well on her bipolar medication.[48] In considering the record as a whole, the ALJ observed that Leonard's medical records consistently documented a normal mood, behavior, thought content, and

---

[45] Tr. 1034 (citation omitted).
[46] *Id.*
[47] Tr. 1035.
[48] *Id.*

judgment and appeared calm, pleasant, and cooperative.[49] Further, other reports, a consultative examination, and counseling records indicated that Leonard cares for her children on a daily basis, makes Tik Tok videos for income, and homeschools her 10-year-old son.[50] Thus, we discern no error with the treatment of this opinion evidence or decision not to include additional mental RFC limitations as supported by substantial evidence.

We similarly find no error with the ALJ's treatment of the co-signed opinion of Dr. Yee and Dr. Cranmer, indicating Leonard has significant and likely disabling work-related physical and mental limitations.[51] The Third Circuit has suggested that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."[52] We find this to be particularly the case here, where the ALJ found Dr. Yee and Dr. Cranmer's opinion was unpersuasive because they provided minimal supporting information on the opinion document itself, and the opinion was inconsistent with Dr. Slowik's opinion, which

---

49 Tr. 1032.
50 Tr. 1033.
51 *Id.*; *see* Tr. 669-670.
52 *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993).

supported nondisabling mental impairments, and Leonard's own reporting on her positive bipolar treatment.[53] Specifically, the ALJ credited that Leonard endorsed to her physicians that she was stable on her treatment regimen, medication was helping the claimant with her sleep and controlling her mood swings and, while she had mood swings here and there, these mood swings were situational and controlled.[54] Thus, we find no error in the ALJ's evaluation of Dr. Yee and Dr. Cranmer's opinion or in the consideration of the inconsistencies between the limitations Dr. Yee and Dr. Cramer identified and Leonard's medical records.

The ALJ also found the opinion of Leonard's primary care provider, Dr. Brammer, which assigned disabling limitations regarding Leonard's ability to function, both mentally and physically, unpersuasive.[55] The ALJ adequately explained why he found the opinion unpersuasive, noting that Dr. Brammer's opinion was inconsistent with Dr. Slowik's opinion and Leonard's own reporting on her bipolar treatment.[56] The ALJ

---

[53] Tr. 1035.
[54] Tr. 1031-32.
[55] Tr. 1036.
[56] Tr. 1036.

specifically discredited Dr. Brammer's opinion regarding disabling verbal outbursts as unsupported by the medical evidence.[57] Accordingly, the ALJ's treatment of the opinion evidence does not require a remand.

Leonard next asserts that the ALJ erred in his consideration of her impairments from her degenerative disc disease of the lumbar spine, claiming that the ALJ should have addressed sit/stand limitations in the RFC and improperly concluded she can meet the standing/walking and lifting demands of light work.[58] Leonard argues the ALJ was required to consider the need to change positions because Dr. Brammer opined that she needs to change positions every 20 minutes and the co-signed opinion of Dr. Yee and Dr. Cranmer identified restrictions in "standing, sitting, walking, bending, lifting."[59]

In crafting the RFC, the ALJ considered and found both opinions unpersuasive. While the ALJ did not explicitly address postural limitations advanced by Dr. Yee, Dr. Cranmer, or Dr. Brammer, the ALJ

---

[57] Id.
[58] Doc. 13 at 18 (citing Tr. 670, 672).
[59] Although the plaintiff cites Dr. Yee and Dr. Cranmer as opining that she cannot stand, sit, walk, bend, lift for greater than 30 minutes, upon review the opinion off sets the foregoing postural limitations with a comma from the limitation of "prolonged contact (>30 min) with clients/customers." *See* Tr. 670.

found their opinions regarding Leonard's physical limitations to be inconsistent with the relatively minor abnormalities shown on diagnostic images of her spine and inconsistent with the lack of current treatment from a provider who specializes in the treatment of back disorders.[60] Further, the ALJ found Dr. Yee, Dr. Cranmer, and Dr. Brammer's limitations to be inconsistent with the opinions of state agency medical consultant A. Vinluan, M.D. and consultative examining physician Gilbert Jenouri, M.D., which the ALJ found to be persuasive and partially persuasive, respectively.

Leonard also contends that remand is warranted because the ALJ improperly relied on the opinion of Dr. Vinluan.[61] The ALJ found Dr. Vinluan's opinion that Leonard is able to perform light exertional work, with no more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling to be persuasive.[62] Leonard argues that the ALJ failed to adequately address the supportability of Dr. Vinluan's opinion and his inconsistency with the opinions of Dr. Jenouri, Dr. Yee, and Dr. Brammer.

---

[60] Tr. 1033-34.
[61] Doc. 13 at 19-20.
[62] Tr. 84.

The ALJ found this opinion to be supported by citations to objective medical evidence in the record, including Leonard's lumber MRI supporting mild disc desiccation and disc bulge with mild facet arthropathy and abdominal x-ray showing no significant bony abnormalities.[63] Thus, we find the ALJ adequately explained the supportability of Dr. Vinluan's opinion.

Further, while the ALJ did not compare Dr. Vinluan's opinion to the opinions of Dr. Jenouri, Dr. Yee, and Dr. Brammer, the ALJ rejected these opinions as unpersuasive. Instead, the ALJ considered Dr. Vinluan's consistency with the record as whole, finding it consistent with Leonard's conservative treatment history for back pain, lack of current treatment from a back specialist, and the relatively minor abnormalities shown on her diagnostic images.[64] Accordingly, we find no error with the consideration of this opinion evidence.

In sum, we find that the ALJ considered all the evidence and adequately explained the decision to include or discount certain limitations as established by the evidence. Accordingly, we find no error

---

[63] Tr. 1033.
[64] *Id.*

with the decision and conclude that substantial evidence supported the ALJ's evaluation of this case. As such, this decision will be affirmed.

## IV. Conclusion

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

Submitted this 4th day of November 2026.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge